UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| KAMONICA MCWHITE-YORK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PEPPERIDGE FARM, INC.,<br><br>Defendant. | **Civil Action No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Kamonica McWhite-York ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Class Action Complaint against Defendant Pepperidge Farm, Inc. ("Pepperidge Farm" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel and review of public documents.

**PRELIMINARY STATEMENT**

1. Food manufacturers must follow certain basic rules and procedures. When a food manufacturer sells or markets a product, it has a duty to ensure that the product is exactly what it is represented to be. When a food manufacturer provides a representation within its packaging, it must stand by that representation. This case arises from Defendant's breach of its duties and rules.

2. Plaintiff brings this action on behalf of herself, and all similarly situated persons who purchased any of Defendant's Goldfish products affixed with a representation stating, "No Artificial Flavors or Preservatives". ("Products" or "Class Products")[1]

---

[1] https://www.pepperidgefarm.com/product-finder/?category=2329

3. Plaintiff brings this action to remedy various violations of law in connection with Defendant's, marketing, advertising, selling, and representing, of the Class Products.

4. Specifically, the Class Products have affixed to each package a representation that Defendant's product contains "No Artificial Flavors or Preservatives".

5. Unfortunately, this is not actually the case. Defendant's Products do contain artificial preservatives, namely, citric acid.

6. The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including counsel's analysis of publicly available information.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the Proposed Plaintiff Class, on the one hand, and Defendant, on the other, are citizens of different states.

8. This Court has personal jurisdiction over Defendant Pepperidge Farm because Defendant Pepperidge Farm has purposefully availed itself to this District's jurisdiction and authority, given Defendant's minimum contacts within this District through Defendant's extensive marketing, advertising, and sale of items throughout this District.

9. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and Defendant sells and distributes its products throughout the United States and within this District.

## PARTIES

10. Kamonica McWhite-York is a citizen of the State of South Carolina and resides in Florence, South Carolina. Florence is located within Florence County, South Carolina.

11.     Defendant Pepperidge Farm is a corporation organized and in existence under the laws of the State of Connecticut. Defendant's principal place of business is located at 595 Westport Avenue, Norwalk, Connecticut 06851.

## FACTUAL ALLEGATIONS

12.     Around December of 2023, Plaintiff purchased Defendant's Goldfish Flavor Blasted Baked Snack Crackers Xtra Cheddar[2] at her local Food Lion in Florence, South Carolina.

13.     The product Plaintiff purchased contained the same false representation about preservatives that all of Defendant's Goldfish Products contain.

14.     Based on Defendant's active and persistent promotions touting the quality of its Products and on Plaintiff's admiration of Pepperidge Farm products, Plaintiff considered Pepperidge Farm a quality company with a strong reputation for producing quality food.

15.     In addition to Pepperidge Farm's reputation (gained through marketing and promotion), Plaintiff decided on Goldfish Flavor Blasted Baked Snack Crackers because she believed it was a high-quality product free of any artificial flavors or preservatives.

**Citric Acid Is A Preservative**

16.     As mentioned earlier and discussed in more detail below Defendant Misrepresents that the Products contain "No Artificial Flavors or Preservatives". This misrepresentation is found both on the Product's label or packaging as well as Defendant's website.[3]

17.     Examples of Defendant's representation are illustrated below:

---

[2] https://www.pepperidgefarm.com/product/goldfish-flavor-blasted-xtra-cheddar/
[3] https://www.pepperidgefarm.com/about-goldfish-ingredients/







18. As shown above, Defendant has a long maintained that the Products do not contain artificial flavors or preservatives. However, citric acid, a compound listed in the Products' ingredients, is an artificial preservative.

19. While citric acid is an organic compound that naturally occurs in fruits, food and beverage manufacturers often use a synthetic citric acid that is far from the naturally occurring citric acids found in fruits.[4]

20. The FDA defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).

21. The FDA also classifies and identifies citric acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of uses of preservatives like citric acid, including snack food[5]

22. Citric acid's use as preservative is further evidenced by a formal warning letter sent by the FDA to Chiquita Brands International in 2010. The letter stated, among other things:

> The "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22.[6]

---

[4] https://www.verywellhealth.com/what-is-citric-acid-7111742#:~:text=Many%20manufacturers%20add%20citric%20acid,occurring%20citric%20acid%20in%20fruits.

[5] https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf

[6] https://www.packagingdigest.com/trends-issues/food-packaging-fda-says-chiquita-labels-are-misleading

23. Moreover, in addition to being a preservative, citric acid also imparts artificial flavor. While citric acid is naturally found in fruits and vegetables, the citric acid found in processed foods, like the Products, is artificial or manufactured citric acid ("MCA") that has gone through extensive chemical processing.[7]

**Consumers Actively Seek Preservative-Free Foods**

24. Consumers have been increasing their clean eating practices for some time, seeking foods that are unadulterated and free from artificial colors, flavors and preservatives (up from 54% in 2009 to 69% in 2020), which in turn drives natural color and flavor innovation within the supply chain.[8]

25. Defendant has exploited consumer demand for preservative-free food by representing that its Products do not contain artificial flavors or preservatives.

26. Data suggests that 84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods.[9] In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent).[10]

---

[7] Iliana E. Sweis and Bryan C. Cressey, Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series for four case reports, NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION, U.S. NATIONAL LIBRARY OF MEDICINE NATIONAL INSTITUTES OF HEALTH (August 9, 2018); https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/ (last accessed Jan. 11, 2024)

[8] https://www.foodbeverageinsider.com/market-trends-analysis/data-reveals-food-traits-consumers-seek

[9] https://www.mintel.com/press-centre/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed/#:~:text=Among%20the%20top%20claims%20free,%2Dfree%20(71%20percent).

[10] *Id.*

27.     Defendant capitalizes on the publics' preference for foods free from artificial flavors and preservative. However, this capitalization comes at a cost to consumers as they become the subjects of deceit and misrepresentation.

28.     Thousands if not millions of times a day, consumers make health conscious decisions based on representations made on the labeling of food products. Plaintiff and the Class are no exception.

29.     Plaintiff and the Class made their purchasing decisions in detrimental reliance on Pepperidge Farm's false representations that their Products contain "No Artificial Flavors or Preservatives".

30.     Plaintiff and the Classes reliance was reasonable in that they would not have purchased Defendant's Products had they known that the Products contained artificial preservatives.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action on behalf of herself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

   a) **Nationwide Class:** All persons in the United States who purchased any of the Class Products.

   b) **South Carolina Subclass:** All persons from South Carolina who purchased any of the Class Products.

32.     Together, the Nationwide Class and South Carolina Subclass will be collectively referred to as the "Class" or "Classes." Members of these Classes will be referred to as "Class Members".

33.     Plaintiff qualifies as a member of each of the proposed classes in the preceding paragraphs.

34. Excluded from each of the putative classes are any person who falls within the definitions if the person is (i) an employee or independent contractor of Defendant; (ii) a relative of an employee or independent contractor of Defendant; (iii) an employee of the Court where this action is pending.

35. The proposed class definitions in ¶ 38 as limited by ¶ 41 may be amended or modified from time to time.

36. The particular members of (i) the Nationwide Class and (ii) the South Carolina Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents, and from public records.

37. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

38. The Proposed Classes are so numerous that the joinder of all members is impracticable.

39. This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

40. **Numerosity: Fed. R. Civ. P. 23(a)(1)** Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

41. **Typicality: Fed. R. Civ. P. 23(a)(3)** Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Class Product that contained the same misrepresentation found in all other Class Products.

42. **Adequacy: Fed. R. Civ. P. 23(a)(4)** Plaintiff is an adequate class representative because her interests do not conflict with the interests of the Class that she seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class-action litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the Class.

43. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members, and questions of law and fact common to all Class Members predominate over questions affecting only individual Class Members. Class Members can be readily identified and notified based on, inter alia, Defendant's business records or other sources.

44. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** Common Questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

   a. Whether Defendant is responsible for the conduct alleged herein, which was uniformly directed at all consumers who purchased the Product;

   b. Whether Defendant's misconduct set forth herein demonstrates that Defendant has engaged in deceptive and/or unlawful business practices with respect to the advertising, marketing, and sale of its Product;

   c. Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Product;

   d. Whether Defendant's false and misleading statements concerning the Product were likely to deceive the public;

   e. Whether Plaintiffs and the Class are entitled to injunctive relief;

   f. Whether Defendant was unjustly enriched;

   g. Whether Plaintiff and the other Class Members are entitled to damages and other monetary relief.

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY
**(Individually and on Behalf of the Classes)**

45.   Plaintiff incorporates paragraphs 1-44 as if fully set forth herein.

46.   Plaintiff brings this count on behalf of herself and the Classes.

47.   Plaintiff and other Class Members formed a contract with Defendant at the time they purchased their Class Products. The terms of the contract include the promises and affirmations of fact and express warranties made by Defendant.

48.   The terms of the contract include the promises and affirmations of fact made by Defendant on the Class Products' packaging and through marketing and advertising, as described above.

49.   This labeling, marketing, and advertising constitute express warranties, and they became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Classes and Defendant.

50.   As set forth above, Defendant purports, through its advertising, labeling, marketing, and packaging, to create an express warranty that the Class Products are free from artificial flavors and preservatives.

51.   Plaintiff and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Class Products.

52.   Defendant breached express warranties about the Class Products and their qualities because the Class Products did contain artificial flavors or preservatives; namely citric acid, thus the Class Products do not conform to Defendant's affirmations and promises described above.

53.   Plaintiff and each of the members of the Classes would not have purchased the Class Products had they known the true nature of its contents and ingredients.

54. Due to Defendant's breach of warranty, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

55. As a result of Defendant's breach of express warrant, Plaintiff and the class have been damages in an amount to be determined at trial.

## COUNT II
## UNJUST ENRICHMENT
### (Individually and on Behalf of the Classes)

56. Plaintiff incorporates paragraphs 1-44 as if fully set forth herein.

57. Plaintiff brings this count on behalf of herself and the Classes.

58. Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's misrepresented Class Products.

59. Defendant voluntarily accepted and retained this benefit. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Class Members.

60. Because this benefit was obtained unlawfully—namely, by selling and accepting compensation for misrepresented Class Products — it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

61. The circumstances, as described further herein, are such that it would be inequitable for Defendant to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class Members.

62. Defendant manufactured, marketed, and sold the Class Products under the guise of them being free from artificial flavors and preservatives. Instead, Defendant sold the Products with manufactured citric acid, a known food preservative and flavor enhancer.

63. Because it would be unjust and inequitable for Defendant to retain the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes, Defendant must pay

restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, on behalf of herself and members of the Classes, requests that the Court enter judgment in their favor and against Defendant, awarding as follows:

A. Certifying the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B. Declaring that Defendant is financially responsible for notifying the Proposed Classes Members of the pendency of this action;

C. Awarding all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

D. Scheduling a trial by jury in this action;

E. Awarding pre and post-judgment interest on any amounts awarded, as permitted by law;

F. Awarding costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

G. Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: January 15, 2024

Respectfully Submitted,

/*s/ Paul J. Doolittle*
Paul J. Doolittle (Fed ID #6012)

Blake G. Abbott (Fed ID #13354)
**POULIN | WILLEY |**
**ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
Email: paul.doolittle@poulinwilley.com
       blake.abbott@poulinwilley.com